**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **ABDOU SAMB** | : | **CASE NO.** |
| 504 Sorna Drive | | |
| Englewood, Ohio 45322 | : | **JUDGE:** |
| | | |
| **Plaintiff,** | : | |
| | | |
| v. | : | |
| | | |
| **CARGILL, INC.** | : | **COMPLAINT** |
| 3201 Needmore Road | | |
| Dayton, Ohio 45414 | : | **(Jury Demand Endorsed Hereon)** |
| | | |
| **and** | : | |
| | | |
| **UNITED STEELWORKERS UNION #1493** | : | |
| 13 Triangle Office Park, Suite 1301 | | |
| Cincinnati, Ohio 45246 | : | |
| | | |
| **Defendants.** | : | |

## Parties

1. Plaintiff Abdou Samb ("Samb" or "Plaintiff") is a citizen and resident of the State of Ohio, Montgomery County.

2. Defendant Cargill, Inc. ("Cargill") is a for-profit corporation, incorporated in the State of Ohio with a corporate office in Dayton, Ohio (Montgomery County).

3. Defendant United Steelworkers Union #1493 ("Local 1493") is a labor organization with offices and operations in the State of Ohio and which represents workers at Cargill's Dayton plant.

## Jurisdiction and Venue

4. At all times relevant, Cargill operated in and conducted business in Montgomery County, Ohio.

5. Samb was employed by Cargill to provide services in Montgomery County, Ohio.

6. Venue is proper pursuant to 28 U.S.C. §1391(b) because Plaintiff was employed in this Division and District, the Defendants operate in this Division and District, and the unlawful conduct alleged in this Complaint took place within this Division and District.

7. This Court has jurisdiction over the first and second causes of action pursuant to 28 U.S.C § 1331 because they arise under the Title VII of the Civil Rights Act of 1964.

8. The Court has ancillary or supplemental jurisdiction over the state law violations averred in the first and second causes of action pursuant to 28 U.S.C. § 1367 because they arise from the same case and controversy.

9. Plaintiff has exhausted his administrative remedies, and he has received notice of his right to bring suit by the Equal Employment Opportunity Commission ("EEOC"). Plaintiff was issued notice of his right to bring suit on his federal claims on November 1, 2017.

## Factual Allegations

10. Abdou Samb was employed by Cargill as a Fructose Operator from November 2000 to November 2016.

11. At all times relevant, Mr. Samb was an employee of Cargill, and he was a member in good standing of Local 1493.

12. Abdou Samb is an African-American citizen, his national origin is Senegal.

13. On or about October 12, 2016, Samb was speaking to a co-worker, Rodney, privately. Upon information and belief, after Samb stepped away from the conversation, another co-worker, John Harlow, approached Rodney and demanded to know what he and Samb had been speaking about. Upon information and belief, Rodney told Harlow that Samb had said that Cargill was "f***ing racist."

14. John Harlow is Caucasian.

15. Upon information and belief, Harlow then reported to Joe Gerace what he had been told Samb had said.

16. Joe Gerace is also Caucasian.  Gerace is also the President of Local 1493.

17. Upon information and belief, Gerace then reported to Cargill's Human Resources department what he had supposedly heard from Harlow (…who supposedly heard it from Rodney, who supposedly heard it from Samb).

18. On or about October 19, 2016, Samb was called to Human Resources and accused of "loudly" and "repeatedly" making statements about Cargill being racist and swearing. Samb patiently denied that he had used profanity, denied that he was upset when speaking to Rodney, but he did agree that he had called Cargill racist in his private conversation with Rodney.  When pressed for his basis for such a comment, Samb explained that it was his perception that Cargill discriminated against black employees. Among other things, he specifically mentioned that he was disappointed that there were no blacks in management at Cargill's Dayton plant and that several black employees had recently been fired.  Samb stated that minority employees talk about race relations at Cargill often.  Samb also offered to apologize to anyone he offended, but Human Resources refused to tell him who had reported Samb to management.

19.    Samb was told by Human Resources representatives that Cargill would investigate his claims of unfair treatment toward black employees.  They never did.

20.    Then, on or about October 20, 2016, Samb was speaking privately to another cowoker, Armando Ocampo.  Samb told Ocampo that he thought people were trying to get him fired.  Apparently overhearing this, John Harlow became enraged and demanded to know if Samb was threatening him.  Samb replied that he was talking to Ocampo and asked Harlow why he was getting so defensive.  Harlow hostilely threatened Samb and told him to get out of his personal space.

21.    Upon information and belief, Harlow was never disciplined for threatening Samb.

22.    Instead of investigating Samb's complaints about Cargill, Cargill began to build a case against Samb.  Once that case was built, Samb was called back to Human Resources on November 7, 2016.  There, he was presented with a "Last Chance Agreement."

23.    In its proposed "Last Chance Agreement", Cargill declared that this was its "final effort to deal with his (Samb's) problems."  The Agreement required Samb to admit that he had a "documented history of poor behaviors, disrespect, and intimidation of fellow co-workers."  It required Samb to admit that "in late October 2016, there were multiple interactions between [Samb] and his co-workers that have been substantiated to be unacceptable behaviors in the workplace which include intimidation and bullying tactics to the point where it has created a hostile work environment for employees."  The Agreement also required Samb to (falsely) admit that he had used racial slurs toward white co-workers.

24.     Samb refused to agree to the false statements in the "Last Chance Agreement," to forfeit his rights under the Collective Bargaining Agreement based upon the same, or to forgo his rights under Cargill's progressive discipline process.

25.     Samb was promptly terminated for refusing to sign the Last Chance Agreement.

### Plaintiff's First Cause of Action:
### Wrongful Termination in Violation of R.C. 4112.02 and
### Title VII of the Civil Rights Act of 1964
### (Race Discrimination)

26.     Plaintiff realleges paragraphs 1 - 25 as if fully rewritten herein.

27.     Plaintiff is an employee as defined under Title VII and R.C. §4112.01(A)(3).

28.     Defendants Cargill is an employer as defined under Title VII and R.C. §4112.01(A)(2).

29.     Defendant Local 1493 is a labor organization as defined under Title VII and R.C. §4112.01(A)(4).

30.     Defendant Cargill discriminated against Plaintiff by discharging and otherwise adversely impacting his compensation, terms, conditions, and privileges of employment, because of his race in violation of Title VII and R.C. §§4112.02 and 4112.99.

31.     Specifically, Cargill disciplined Samb for allegedly "aggressive," "intimidating," and "hostile" behavior toward white co-workers when similar (or worse) behavior against him by white employees went unpunished.  In other words, as put neatly by the Last Chance Agreement, when in "close physical proximity to (white) co-workers," Samb was expected to "back down" from those white co-workers.  And, he needed to "respect[] management."

32.     Defendant Local 1493 discriminated against Samb by failing to represent Samb fairly because of his race; by taking the side of white co-workers against Samb; and by using union leadership to report Samb to management for attacking Cargill's reputation for

racism. Local 1493 discriminated against Samb by refusing to pursue his grievance in good faith and with fair representation.

33. Further Local 1493 discriminated against Samb by permitting Cargill to attempt to "set forth the (new) terms and conditions under which [Samb] would continue working for [Cargill]." In other words, Local 1493 was content to permit Cargill to fully bypass the collective bargaining agreement with respect to Samb.

34. Samb was treated less favorably than similarly-situated white employees and union members. He was subjected to different terms, conditions, and privileges of employment, including discipline and termination.

**Plaintiff's Second Cause of Action:**
**<u>Illegal Retaliation for Engaging in Protected Activities</u>**
**<u>(Retaliation)</u>**

35. Plaintiff realleges paragraphs 1 - 34 as if fully rewritten herein.

36. Plaintiff had a reasonable, good-faith belief that the comments he made to his coworkers and human resources about Cargill's racist actions were true and amounted to illegal race discrimination.

37. Plaintiff engaged in protected activity when he opposed what he reasonably believed to be illegal race discrimination. Plaintiff also engaged in protected activity when he refused to sign a tacit admission that *his* protected activities were creating a hostile work environment for his coworkers. Plaintiff engaged in protected activity by refusing to agree to a false statement that accused him of making racial slurs. And Plaintiff engaged in a protected activity when he refused to agree that future, similar actions (like discussing race relations with a co-worker) ought to expose him to immediate termination.

38. Plaintiff's protected activities were done in a reasonable manner.

39. Defendants were aware of Plaintiff's protected activities before he was disciplined and terminated.

40. Defendants subjected Plaintiff to adverse employment actions when they disciplined and terminated him and refused to fairly represent him.

41. Defendants retaliated against Plaintiff because of his protected activities in violation of Title VII and R.C. §4112.02.

42. Any reasonable observer to what happened to Samb at Cargill was delivered a crystal-clear message: If you are black and try to discuss race relations at Cargill, white employees and white union members will report you to management. If you don't back down and relent, then management and the union will collaborate to terminate you. Any reasonable observer to what happened to Samb at Cargill would be dissuaded from complaining about or assisting in complaints race relations in the Dayton plant in the future.

**WHEREFORE,** Plaintiff, Abdou Samb, demands judgment against Defendants as follows:

(a) That Plaintiff is awarded compensatory damages including emotional distress damages;

(b) That Plaintiff is awarded all lost pay and benefits;

(c) That Plaintiff is awarded punitive damages;

(d) That Plaintiff is awarded liquidated damages;

(e) That Plaintiff is awarded pre-judgment interest;

(f) That Plaintiff is awarded front pay;

(g) That Plaintiff is compensated for the adverse tax consequences of receiving a lump sum award rather than their compensation over several, separate tax years;

(h) That Plaintiff is awarded reasonable attorney's fees and court costs; and

(i) That Plaintiff is awarded all other legal and equitable relief to which he might be entitled.

Dated: January 30, 2018.

Respectfully submitted,
 /s/ *Adam R. Webber*
ADAM R. WEBBER, Esq.
Bar No. 0080900
Trial attorney for Plaintiff
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio 45409
Tel.   937.222.3000
Fax   937.222.1414
Email: webber@ohiolawyers.cc

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

 /s/ *Adam R. Webber*
Adam R. Webber (0080900)